# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | **Criminal No. 07-102 (MJD-JJG)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Lafayete Deandre Van,** | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on May 3, 2007 for resolution of pretrial motions. Michael A. Dees, Assistant United States Attorney, appeared on behalf of the Government. Andrea K. George, Assistant Federal Defender, appeared on behalf of defendant Lafayete Van.

Mr. Van (Van) advances two motions to suppress, one for evidence from a search and seizure (Doc. No. 15) and one for statements (Doc. No. 16). These motions are referred for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

In the papers on these motions, Van did not specify any particular grounds to suppress. At the motion hearing, this Court asked Van whether he intended to argue the motions or to submit a written brief. Van chose the latter, and this Court gave him until May 11, 2007 to do so. Van has yet to file a brief and has not asked for additional time in which to file. Because Van has not framed the issues for decision, this Court makes its own assessment here.

## I. BACKGROUND

On the evening of November 28, 2006, several persons placed emergency calls and reported that shots had been fired in the vicinity of Fourth Street and Mendota Avenue in St. Paul. Based on tips from those callers, a police dispatcher stated that the suspect was in an apartment building at 871 Fourth Street, near the intersection where the shots were fired. The suspect was described as a black man in a white tee shirt and jeans.

Several officers from the St. Paul Police Department responded to this call. Officer Mark Ross was among the first to arrive. After finding that the front door of the apartment building was locked, he crossed the street and looked into the building. Through a second floor window, he saw a black man in a white tee shirt. Ross radioed this discovery to other officers on the scene.

Officer Edward O'Donnell, who entered the apartment building through a rear door, received this news. He proceeded to the second floor of the apartment building. There were four apartments on that floor, two of which faced the street. One was vacant, and O'Donnell found no one inside.

He then knocked on the door of the other apartment facing the street. The door was answered by a black man in a white tee shirt and jeans, who was later identified as Lafayete Van, the defendant in this matter. Another person, a middle-aged white man, was standing behind Van. O'Donnell believed this person looked nervous and fearful.

O'Donnell asked Van if he could enter the apartment. Van refused, explaining that it was not his apartment. O'Donnell then asked Van whose apartment it was, and Van gestured to the man behind him. That man then gave O'Donnell permission to enter the apartment.

O'Donnell asked the resident several questions. The resident explained that, after hearing gun shots, there was a knock on his door. It was Van, who claimed he had heard the shots, and he asked permission to use the telephone to call the police. After the resident let Van inside, however, Van hid a firearm in the apartment and told the resident not to tell anyone. Van then called his girlfriend instead of the police.

At some point, either before or after O'Donnell had this conversation with the resident, other officers entered the apartment and detained Van. Ross later took custody of Van and placed him in the back of his squad. In the meantime, officers searched the apartment and found a firearm in a bedroom. Ross later told Van he was under arrest. Van allegedly responded, "I never had no gun. You mean to tell me that I'm being arrested because that old white boy had a gun in his apartment?"

Ross transported Van to jail. Later that evening, he was taken to an interview room, where he met Officer Michael Conroy, also of the St. Paul Police Department. At the time, Conroy was in plain clothes and unarmed. He read Van a standardized form that included a full recitation of his *Miranda* rights. Van initialed and signed the form, indicating that he understood his rights. Conroy then asked Van questions for approximately ten to fifteen minutes. Van did not invoke any of his *Miranda* rights or otherwise complain of discomfort.

Based on information acquired from this interview, Conroy obtained a search warrant for another unit in the same apartment building. This apartment allegedly belonged to Van's girlfriend. The apartment was searched on November 29, 2006, but the record lacks material details about this event. Van has not asserted that he lived at the apartment or that he had an expectation of privacy in items kept there.

## II.     DISCUSSION

### A.     Probable Cause to Arrest

The initial question here is whether officers had probable cause to arrest Van. Consistent with the Fourth Amendment, an officer may not arrest a person without a warrant unless that officer has probable cause to do so. Probable cause exists where, according to the facts and circumstances known to law enforcement at the time of arrest, a prudent person would believe that a suspect had committed or is committing a crime. *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003).

Where officers receive a vague description of a suspect, and many persons could be expected to fit the description, officers do not have probable cause to arrest. *United States v. Shavers*, 524 F.2d 1094, 1095-96 (8th Cir. 1975). But where a person meets the description of a suspect, and other information links that suspect to a crime, there may be sufficient facts to support probable cause. *United States v. Martin*, 28 F.3d 742, 745 (8th Cir. 1994).

The officers here received multiple reports, from several callers, that shots were fired in the vicinity of the apartment building. And many of these callers also were able to describe the race and clothing of the suspect. Within moments of receiving this description, officers observed a man who met the description, in a place that was consistent with a reasonable belief that this person had fired the shots.

When O'Donnell knocked on the door of the apartment where Van was found, he believed the resident was nervous and fearful. Van matched the description of the suspect, and he was in a place consistent with a reasonable belief that he had committed a crime. Under these circumstances, officers had probable cause to arrest Van, and evidence obtained as a result of his arrest need not be suppressed.

### B. Seizure of Firearm After Arrest

Assuming that the arrest was lawful, another issue may be whether the seizure of the firearm from the apartment was lawful. Van has not asserted that the firearm was his. He told O'Donnell that he did not reside at the apartment and he has claimed no reasonable expectation of privacy in its contents. Van has no standing to challenge seizure of the firearm under the Fourth Amendment, and therefore, it cannot be suppressed. *See United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000) (quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).

### C. Statements

The next concern is whether officers committed any constitutional violations when Van made his statements. There are two possible theories for such violations. One is that officers violated due process, through coercive conduct that was sufficient to overcome the free will of the defendant. *See Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004). There is no evidence that any officers engaged in such conduct, so this theory needs no further discussion.

The other theory is that officers violated Van's privilege against self-incrimination. This Fifth Amendment privilege requires that a suspect, once taken into police custody, shall receive a *Miranda* warning before being subject to police interrogation. *See United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). Van was undisputably in custody at the time he made his statements. The issues, therefore, are whether he was subject to interrogation, and if so, whether he then properly waived his *Miranda* rights.

Police actions constitute interrogation when an officer engages in express questioning or its functional equivalent. This standard incorporates words or actions by officers, aside from those normally incident to custody, that police know are likely to result in an incriminating response. *Rhode Island v.*

5

*Innis*, 446 U.S. 291, 300-01 (1980).

Van made his first statement after Ross told Van he was under arrest. Telling an suspect that he or she is under arrest is plainly a statement normally incident to custody. As a result, Van was not subject to interrogation, and his first statement was not taken in violation of his privilege against self-incrimination.

Van made his other statements in response to questioning from Conroy. Because Van was subject to express interrogation, the only inquiry is whether he properly waived his *Miranda* rights. The record shows that Conroy read Van his *Miranda* rights; that Van understood what those rights were; and that Van answered questions without further objection. These facts are sufficient to show that Van received a *Miranda* warning and that he knowingly and intelligently waived his privilege against self-incrimination. *See United States v. Hyles*, 479 F.3d 958, 962-63, 966 (8th Cir. 2007).

Neither of Van's statements violated his privilege against self-incrimination. As a result, his statements need not be suppressed.

### D.     Search Warrant

The remaining potential issue is whether it was lawful for officers to search the apartment of Van's purported girlfriend the day after his arrest. Like the seizure of the firearm the day before, Van has not asserted that he resided at the apartment, or that he had any reasonable expectation of privacy there. So he once again lacks standing to challenge the search, and therefore, evidence from this search need not be suppressed.

## III.     CONCLUSION

Officers had probable cause to arrest Van. They properly seized a firearm from the apartment where Van was arrested. His subsequent statements were not taken in violation of due process or his

privilege against self-incrimination. And he lacks standing to challenge the ensuing search of an apartment purportedly inhabited by his girlfriend. For these reasons, this Court concludes that Van's motions to suppress should be denied.

## IV.   RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Van's motion to suppress evidence from a search and seizure (Doc. No. 15) be **DENIED.**

2. Van's motion to suppress statements (Doc. No. 16) be **DENIED.**

Dated this 22nd day of May, 2007.                    s/Jeanne J. Graham

                                                     JEANNE J. GRAHAM
                                                     United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by June 11, 2007. A party may respond to the objections within ten days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the district court judge is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.